Good morning. I'm Bob Cockerham here on behalf of the appellant, and I'm sure the court has reviewed this thoroughly. I want to pinpoint a few things here if we could today. The interesting situation here with the district court held as a matter of law that Apex, as the consumer of this toilet supply line, should have contemplated that there would be a leak that would occur, even when it said it's leak-proof. But on the other hand, again holding as a matter of law, saying that Jones Stephens, the seller of this who stands in the shoes of the manufacturer, should not have foreseen this, even though Jones Stephens put its own label on there, saying that this is reliable and good and all those sorts of things, but specifically saying that it had a leak-proof seal. That puts a very quandary in the consumer who obviously here there's nothing in the record to say that the consumer knew anything about this product going in in terms of its defectiveness and unreasonably dangerousness aspect of it, especially when it's in the record here over 150 claims against Jones Stephens for this defective and unreasonably dangerous product that they put on the market. Are we talking about the same product, the same toilet supply line? That's the one they said in their answers to the interrogatories. We were speaking about this supply line. That's maybe different than what was in one of the class action suits out there, if that's what the court's referring to. But in their own answers to the interrogatories, which are in the record here, they refer to, and we've got 156 others that occurred before this incident. They don't say the date or anything like that in particular, but with regard to saying, well, yeah, here they are. But, again, if I could address the strict liability first here and then maybe the deceptive trade practices, I don't have time to go through all of them, but I think in particular I think the fulcrum here on the strict liability part is the issue of is this thing or could this thing be unreasonably dangerous. I think that's what we kind of dispute here. It doesn't sound like it, does it? Well, I'd hate for one to explode in my house or your house and damage from the second floor and damage the whole house and all the contents. Yeah, I think that's dangerous to the property, absolutely. Okay, tell us the law that tells us how to draw the line. That's my real point. Well, I think it's a factual issue for a jury to decide at a minimum. At a minimum. I think you answered the question right there, Judge. I think you hit it right on the head. How do we tell? Well, that's why you'd send it to a jury under all the facts and circumstances. Clearly, if that were the case. I'm dying to get you some law. Berkeley pump case. What about the Berkeley pump case? Wonderful case. Absolutely distinguishable. Okay, tell me how it's distinguishable. Two things in particular. One is the definition of unreasonably dangerous, I think, brings it to us under Arkansas law. In the Berkeley pump case, they had this pump. They said, well, it will pump your water stuff out of the river and that kind of stuff. And the court says, well, you know, they went out there. They looked at it. They saw was it working or not. So it's kind of an open and obvious thing to begin with. But they said, look, this thing may have not worked the way you'd like to. But was it unreasonably dangerous? What did it damage? I thought it killed the crops because they weren't adequately watered. That was something that they knew. This was a sophisticated user of the product. But it wasn't decided based on knowledge. It was decided based upon them being a sophisticated user. And in the statute, in the law in Arkansas, it says you must take into consideration the knowledge, the sophistication of the consumer. Here, there's nothing in the record, nothing to say that my client was a knowledgeable, sophisticated user of this product. Nothing. Zero. So how does a court find, as a matter of law, that that now satisfies what I say is at least a two- or three-pronged test there? One, it has to be contemplated. Well, how could it be contemplated by my client? In the other case that you cite, Jeff Benton, they went out there and looked at it. They said, well, how's this thing working? Before we go too far down, somebody else installed this, and we've got to assume the plumbers had special knowledge about the risk of total supply lines. Assume? We have to assume? How do we assume that? Because you're not the buyer. Because the plumber bought it, the plumber put it in. The guy could have been an idiot. Where's that in the record? That's completely void of the record. Okay, well, now let's try the Williams case on you. What about the Williams case? Just a regular old nut malfunctioning. They said that's not a dangerous condition, said the Arkansas Supreme Court. You know the case I'm talking about, Williams versus Smart Chevrolet Company? 1987 Arkansas case? Maybe. Don't worry about it. Maybe I have to review on that one. No, that's okay. But I'm sure the facts are distinguishable in terms of what the record is in this case. No, it's not a laughable thing here because this was decided as a matter of law based upon the record before it, and the record before it does not show that my client contemplated this. In fact, it shows the opposite. It shows any reasonable person would think the opposite. Well, these cases don't seem to turn on what the specific buyer contemplated. They talk about what a reasonable and ordinary consumer would contemplate. Absolutely. All right, well, you say absolutely, but a minute ago you were saying there's nothing in the record that shows my client contemplated this, which made it sound like you were arguing that it was an inquiry specific to the particular buyer. Oh, no. No, no, no. All right, so you're agreeing it's an ordinary reasonable buyer. So how do we decide whether an ordinary reasonable buyer contemplates that a plumbing fixture might leak? I think that's a question for a jury. I mean, how can you say it's a matter of law? Then the court's going to say, well, I can say it's a matter of law. Don't you agree there are some cases where every state Supreme Court is going to say that's beyond and we're not going to let that go to a jury because it's so clear? Like shoes wearing out, you know, something like that. I can't think of the most plain thing. This isn't shoes wearing out. This is a product defect. No question about that. No question it's a product defect which has been known in the industry since before this was bought, manufactured, installed, and all that. I mean, that's in the record in the undisputed affidavit, which is also very interesting here how their only fact that they rely upon is that this thing was, you know, bought and installed in 2004, 2005. That's the only fact they bring before the court. The only fact. Well, how do you determine anything on that? They didn't respond to any of our statement of facts or the affidavits in terms of countering them other than allegations and speculation. You're talking about the last sentence in the Vanderstand affidavit? Is that what you mean? As to what it is? No, when you just said it was well known in the industry. Yes. She has one sentence that says the fact that voids could be formed during the manufacture of plastic coupling nuts was well known in the industry. Yes, and also within his report, the materials was also a class action suit in 2003. So there's a suit filed in 2003 talking about the defectiveness of this thing breaking exactly where it breaks. If you take the standard here, every reasonable inference in favor of my client under the circumstances here, if we were here after a trial, I don't think we'd be here after a trial on these points, okay? The argument here is very simple. This was saying as a matter of law, I'm not going to believe this affidavit even though there's nothing to go against it, okay? It says before that time, you know? How does that show that Jones-Stevens knew about it? Well, there's a contrast here. So my client as a consumer is supposed to know about it, and Jones-Stevens, who is putting their label on it, what tells us that they knew or should have known about it, whether they knew or not is irrelevant here, especially it's totally irrelevant in the strict liability context, but even in the negligence or negligent failure to warn context, they're putting their label on it saying Jones-Stevens, saying this is reliable, this is a leak-proof seal, this thing is great, you know? They're doing all of that, and we're saying as a matter of law that the consumer has a greater knowledge of this and a greater understanding of this product than the person who is selling this, standing in the shoes of the manufacturer, who puts its own label on it, telling every consumer and the person installing it, whether they have a half-brain on installing it or not, I'm not calling anybody out here, but again, there's nothing in the record to say what the person knew or didn't know, but what a reasonable person would know, I'd say as a reasonable person, they'd say Jones-Stevens, boom, they put their label on this, they represented that this is how it's going to be, and then this thing turns out not to be that way. I mean, the burden here shifts to them, you know? We've presented the case, we say it is unreasonably dangerous, we have affidavits supporting this, we have a catastrophe, you say is this a bad thing, this is not shoes wearing out, go get another pair of shoes. This is a whole home destroyed there, this building, okay, that they're using as the duck club deal, okay? What if it had been discovered earlier so there was less damage, then would it be different? Well, the dollar amounts would be less. Would that be different on strict liability? You say if it, like, dripped? No, I'm saying it exploded, but you found it within a half hour and stopped it. If it exploded, it's still a catastrophe, because you're looking at the whole picture here as to what this item is. And you seem to be relying on the fact that a whole building was destroyed. I am relying exactly what you said. I'm relying on the facts and what a jury would decide as to one way or the other, as opposed to saying, look, this is not unreasonably dangerous. It's not unreasonably dangerous. I mean, the 156 they have and the thousands that are in the other class action suits, wait a minute, there's something bad with this thing. Now, is it unreasonably dangerous? That goes to the contemplation and the sophisticated user test. And both of those fail here. Or at a minimum, they are factual issues for a jury to decide and have the opportunity to decide those. If I could shift gears just for a minute, because I'm looking at the clock. How would you put on evidence of what an ordinary and reasonable buyer would know? How do you put on evidence of that? It's not evidence about what your buyer knew. It's about evidence of what an ordinary and reasonable buyer would know. That's a jury question. That's a jury question. How do you put on evidence of what an ordinary and reasonable buyer would know? What would you present? Well, I would put the evidence of what my client knew or didn't know for one. That would be one. And the other people, I'd go and, you know, the Jones-Stevens, I mean, if they're selling such a product and they're representing that this thing doesn't leak and then it explodes and causes a catastrophe and damage to property, you know, what happens the next time when one of these breaks and there's a baby down there and it drowns? Does that shift things? A good jury question. But does this make every electrical fire then? I mean, that's a pretty bad deal if there's a miswiring of a house. I'm going on the facts here, and this is a catastrophe to my client's property. And under the Arkansas law, we're entitled to go in front of a jury and prove that to a jury. You know, otherwise we just draw the line and say, forget it, any product you buy, it messes up, you know, you're off the hook. Well, yeah, but I'm giving you the opposite situation. You and I are talking past each other, so I'm trying to give you cases where everybody would say that's not a dangerous condition to property, that any ordinary and reasonable buyer would know that that's, you know, that's not beyond what's contemplated. You and I are talking. It's okay. Yeah, well, I'm not wearing my shoes around the toilet thing that somebody said is not going to leak. Now, if I have to go up here to the answer, if I have to go up to my bathroom every day, this answers both your questions here, and check and see if that thing is leaking, why would I do that to begin with because the thing says it doesn't leak? And number two, I'm supposed to check that every day? Now, I might have to check my shoes now and then to see if the tread's worn out. Okay? But do I go into the bathroom and go under there and wherever that gadget is underneath and go look at this thing? Is that for a reasonable consumer to do? No, because they don't contemplate it. Different than the other case where he's out there looking at the product, whether the thing's flowing water and it flows good or doesn't flow. That's a sophisticated buyer that understands how a pump works and doesn't work, totally distinguishable from the facts in this case. All we're asking for is a trial on the merits of the case. I'll just take one moment so I can say something perhaps on reply. We found something on the Deceptive Trade Practices Act, which proves our case. It just found this. It's a 2017 change to the statute, which the legislature did. All right, well, you can submit a letter to us under Federal Rule 28J. If we could do that, please, because I just found that. I think that would be the more efficient way to do it. I mean, your counterpart will receive it and he can reply. It shows that reliance is not required or hadn't been before or at least was ambiguous under the statute. But we'll address that in the letter. Read the rules so you know what's an appropriate submission. We'll do that, Your Honor. Very well, thank you. Mr. Emerson, we'll hear from you. Good morning. It's still morning, barely. It's been too long for me. I'm Mike Emerson. It's an honor to be here. Very interesting case. I know this court takes very seriously its obligation to supervise the district courts to make sure they're discharging their duties under the Erie Doctrine and to make sure that they are faithfully applying the state substantive law that Judge Baker was obligated to apply and did, in fact, apply here. I don't want to argue a case that didn't happen. I'm going to try to speak to the facts of this case. Let me start out, Judge Colleton, what or what was not within the contemplation of an ordinary buyer, it is part of our definition of what is defective and what is unreasonably dangerous. That's not necessary for this decision. That's the motorcyclist that can have no expectation that a motorcycle is going to provide rollover protection on a side impact case. I agree it is an objective test, but it's not necessary to this decision. I thought that's what Judge Baker was doing with the Berkeley pump case. She did, but it wasn't necessary. All right. Okay. We've got standard 402A strict liability by statute since 1973. As a product liability practitioner, we get caught up in, well, was it defective, and two, did it hurt anybody or did it break anything? The first part of that is more of what we usually consider to be defect. Was there a malfunction? Every warranty we've ever seen, was there a defect in material workmanship? Arkansas defines defective as unsafe. The word malfunction is not in there. Defective has got to be unsafe for reasonably foreseeable use. That is in our Product Liability Act passed in 1979. The other aspect is that ‑‑ Wait. I don't know where you're going because this was unsafe. We heard there's a lot of other cases. It messed up and did a lot of damage. There's no evidence. As of the time that this was installed, there's not any evidence in this record of any failures of the Jones-Stevens nut at issue. Okay? So that is all later stuff that can't come into play as to what Jones-Stevens knew or should have known at the relevant time frame. I submit we use 2004, 2005. We don't know when it was manufactured in China. We don't know when Jones-Stevens placed it into the stream of commerce because once it did, anything after that is post-sale. All we know is that these plumbers, one of these plumbers in East Arkansas, bought it somewhere in East Arkansas and put it in a duck club in Humphrey sometime in 2004, 2005. Let's go back to the legal issue. I want to make sure I understand your position. I thought on the strict liability claim, Judge Baker said this leak or stream is something that could have or should have been contemplated by Apex. Okay. You say that's not necessary. She said it. I don't know. Are you defending that or not? It's not necessary to her decision or to this. All right. Well, she didn't give an alternative reason for dismissing the strict liability claim. She did. And I'm getting there, Judge. The other aspect of this is that it's got to be unreasonably dangerous. And danger, unsafe is not defined by statute. Danger is not defined by statute. The Berkeley pump case says it's got to be an actual danger. And the core holding of Judge Baker was that the nut did not present a distinct danger in this case. That was her core ruling. And that is unimpeachable. We've got one case that I have found in Arkansas, and it's a good case. It's the Farm Bureau Case Corporation of the new tractor that caught on fire. Now, they spend most of the decision talking about the sufficiency of the evidence of defect. But they say you can't seriously contend that a tractor that catches fire is not unreasonably dangerous. What's the name of that case? It's the Farm Bureau Case Corporation. It's not in your brief? It is in your brief? Tell me two parties. It's got to be. And I can look it up, but it was cited in her decision. And we don't take issue with that case. We agree that a tractor that catches fire is unreasonably dangerous. Okay? The only water case we have in Arkansas is the Omara v. Dykema case. And that was the case where we know in Arkansas a house is a product. That's Black v. Fred Hunt. It did not address whether formaldehyde in carpet is unreasonably dangerous. It just said a house is a product. So the Omara v. Dykema case affirmed summary judgment for the defense. That involved water intrusion and entry into a home that caused property damage, which is the same core facts of this case. And Judge Thornton, speaking for the unanimous Arkansas Supreme Court, said say what you will about it. It's not unreasonably dangerous. And the appellant says, well, that was just a failure of pleading. No, it wasn't. They evaluated it. I'm sorry. So is it the water you're saying can never make it dangerous? On the facts of this case, this is not an unreasonably dangerous product. This is a UCC warranty case that, unfortunately, the clock ran out five years before this failure happened. And so we're having to stretch strict liability far out of proportion to what any Arkansas court has ever applied it and past the breaking point. So this is not, in your view, dangerous to property? This is not dangerous. This does not present actual physical danger. They went that route. Tom Mars went that route in the O'Mara case. He couldn't do it. If he can't do it, it can't be done. And the court said, whatever else you say, a water entry that causes property damage, it's not dangerous. And that is the core holding of Judge Baker. It is under the standards set forth by this court. It was a thorough analysis that she did. It has a very, very reasonable and rational basis. It's not contrary to any reported decision in Arkansas and is entitled to substantial deference. And this honorable court, that's the law of this honorable court. No, no, we don't defer to the district court matters of law. Go ahead. The Supreme Court has said that for 30 years. Well, on matters of the district court's interpretation of application of state law. No, we don't. Salve, Regina. Salve, Regina. Well, proceed, though. Okay. She was right. There's not any Arkansas case saying that she was wrong. Unfortunately. But mostly she relies on Berkeley Pump, and you say Berkeley Pump doesn't apply here. No, I didn't say that. I think Berkeley Pump. Well, I thought you did. Well, the Williams case was a personal injury case. That's a little bit, just for clarification, that was a personal injury case. And I'll agree that a product that causes personal injury fits squarely within 402A in our product statute. No dispute about that. Berkeley Pump, she quoted it at length. It obviously requires actual danger. Say what you will about this, it's not a dangerous situation. Nobody fell down. That didn't happen. That's the next lawsuit. That's not this lawsuit. So you think danger must be physical health of a person? Well, and that's the core issue. To accurately frame the issue is can an alleged malfunction of a product cause property damage when the product is not defective and unreasonably dangerous? And under the Omar v. Dykema case, there is a realm of cases in Arkansas where the answer to that is a resounding yes. It's just not much reasoning, with all due respect. How do we get a handle on why in Omara there was not an unreasonably dangerous condition? Unsafe is not defined by statute. We go to Webster's. Danger is not defined by statute, so we go to Webster's. You go to Webster's, it's going to say what it says, capable of causing injury. And so using the common sense application and definition that we give to those terms, Judge Baker was on solid ground. If I can briefly mention the ADTPA. Apex did not purchase this. They have not submitted any claim that said that in this context that a non-purchaser can reasonably rely or have resulting damages from an alleged deceptive practice. The case they have is the, let me get this case real fast, I'm sorry. It is the ElectroCraft case. The ElectroCraft plaintiff was the purchaser, so that's a non-issue. We agree that non-consumers can file lawsuits under the ADTPA. You can be an aggrieved commercial entity and be an ADTPA plaintiff. It's not limited just to consumer transactions. That's all that case says. But the fact is, these plumbers, this is based not on a tag, this is boilerplate on a tag. And these plumbers are around, presumably. It's not our burden. We don't have to prove anything. They've got federal court subpoena power and can put that record before Judge Baker. They didn't. Let me ask you a simple question. Under the Arkansas Deceptive Trade Practices Act, does the person suing have to show they relied on the representation, the deception, the whatever? That is the case law. The precise statutory language has damage resulting from the act. And the courts have described that as a reliance requirement. There's still got to be cause and effect damages from that. And, again, I'm not familiar with what the letter's going to be. Apparently the last word has not been spoken about that. But there's absolutely no idea of what these plumbers knew or did or relied on at all. And so there's a way to bring that before the court and to get it in the record. And the absence of evidence is the problem with the party that has the burden of proof, not us. Again, in this case, we don't have to prove anything. But if I can speak briefly about the negligent failure to warn, there's no evidence. There's been no discovery about what Joan Stevens knew or should have known back in 2004. Well, he says this expert said it was well known in the industry. Right. That there could be voids from the manufacturing process. There's nothing that says that it's known that these products fail. Interestingly, he mentioned a 2003 class action. That's not in this record. The 2012 class action is. What was the allegation in that? Was that these folks have a reasonable expectancy that this product should have an average useful life of 10 to 15 years. This one had nine years and probably more. And so, you know, to describe this as a ticking time bomb, their word's not ours. I'll tell you, that time bomb, it ticks for 10 years. That's a pretty long fuse that I would have to say. And catastrophic failure, that's all lawyer talk from counsel. There's no evidence of that. All we've got is the affidavit that says stream of water. And we don't know anything about how much sheet rock they had to replace or if there were some, you know, That was not developed, but certainly under the damages allegations that they have and the evidence that they have come forward with thus far, they have not met their burden of proving actual physical danger. My time is up. I thank the court. Thank you for your argument. And I will yield the floor. We'll hear from Mr. Cockerham on rebuttal briefly. Briefly. Very quickly on page 25 of our brief, it has the Blagg case. Arkansas Supreme Court, quote, can find no valid reason for holding that strict liability should not apply to property damage. Counsel just said there wasn't a case in Arkansas about it. Well, here's the Supreme Court saying specifically it does apply to property damage. Again, property damage. What about O'Mara? What? Why wasn't O'Mara an unreasonably dangerous situation? I think a different factual situation there altogether. Well, every one of these cases is different facts. We're trying to decide what the legal proposition is that we derive from it. So I'm asking you, why do you think that wasn't unreasonably dangerous if it caused serious water damage to the house? Well, it wasn't a catastrophe. It didn't happen all at once. I mean, that's one thing. You don't expect your water tank, the pipe to blow up there, the coupler here to blow up and to destroy the home. If something flows in or something, again, something drips or something, that's a different thing. But, I mean, here you've got something that's represented by them to be leak-proof. It's just a different story. Again, the bottom line to us is this is a factual matter for a jury to decide. Let them decide what it is one way or the other. Here, and you were right, Your Honor, if I could just take one more second here, on page 8, which is also addendum 8 of the district court's opinion, it says the possibility of a leak of the toilet line was something or should have been something that Apex contemplated. That's the ruling here. That's the whole hook. There is not a distinct danger poised by this toilet supply line. Well, it is a danger, and counsel has admitted before the court today it was a danger because it was unsafe. The Supreme Court says that's the property damage. We would ask for our day in court and have a trial on the matter at a minimum. I'm not so sure it's not summary judgment for us, but I think as a minimum, this is a matter for the other. And with your indulgence, I'll submit the other matter which just came to our attention. Thank you, Your Honor. Thank you for your argument. The case is submitted, and the court will file an opinion in due course.